**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

COLIN R. BRICKMAN, individually and on behalf of a class of similarly situated individuals,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Intervenor-Appellee,*

META PLATFORMS, INC.,

*Defendant-Appellee.*

No. 21-16785

D.C. No. 3:16-cv-00751-WHO

OPINION

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted October 21, 2022
San Francisco, California

Filed December 21, 2022

Before: Ronald Lee Gilman,[*] Consuelo M. Callahan, and Lawrence VanDyke, Circuit Judges.

Opinion by Judge Gilman;
Concurrence by Judge VanDyke

## SUMMARY[**]

### Telephone Consumer Protection Act

The panel affirmed the district court's dismissal with prejudice of Colin R. Brickman's class action against Meta Platforms, Inc. (Meta) under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, which generally bans calls made to a telephone if the call is generated by an "automated telephone dialing system," commonly referred to as an "autodialer".

The TCPA defines an autodialer as a piece of equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" (an RSNG), and "to dial such numbers."

Brickman argued that Meta violated the TCPA by sending unsolicited "Birthday Announcement" text messages to consumers' cell phones; he alleged that these text messages were sent by Meta through an autodialer that

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

used an RSNG to store and dial the telephone numbers of the consumers being texted.  He did not argue that the RSNG actually generated the consumers' phone numbers (consumers provided them directly to Facebook), but that the RSNG was used to determine the order in which the phone numbers were stored and dialed, an activity that he argued implicates the TCPA.  Meta argued that the TCPA-defined RSNG must actually generate the phone numbers in the first instance.

The question on appeal is whether a TCPA-defined autodialer must use an RSNG to generate the telephone numbers that are dialed.  Another panel of this court answered this exact question in *Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022), holding that "an [autodialer] must generate and dial random or sequential telephone numbers under the TCPA's plain text."  The panel therefore held that Meta did not violate the TCPA because it did not use a TCPA-defined autodialer that randomly or sequentially generated the telephone numbers in question.

Judge VanDyke concurred because the panel's decision is boxed in by *Borden*, but he disagrees with *Borden* because it wrongly concludes that the word "number" means the same thing in all instances where it appears in TCPA's definition of an autodialer.  *Borden*'s interpretation of autodialer overlooks that the phrase "random or sequential number generator" has a known meaning as a computational tool which is not limited to generating phone numbers, as the Supreme Court acknowledged in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.7 (2022), and to interpret the statute as *Borden* did removes any independent meaning for the word "store" from the TCPA's definition of an autodialer, thereby cutting the legs out from under the Supreme Court's interpretive rationale in *Duguid*.

# COUNSEL

Patrick J. Perotti (argued) and Frank A. Bartela, Dworken & Bernstein Co. LPA, Painesville, Ohio; Andrea R. Gold and Hassan A. Zavareei, Tycko & Zavareei LLP, Washington, D.C.; Sabita J. Soneji, Tycko and Zavareei LLP, Oakland, California; for Plaintiff-Appellant.

Lindsey Powell, United States Department of Justice, Washington, D.C., Intervenor-Appellee.

Samir Deger-Sen (argued) and Peter Trombly, Latham & Watkins LLP, New York, New York; Andrew B. Clubok, Susan E. Engel, and Gregory B. in den Berken, Latham & Watkins LLP, Washington, D.C.; Elizabeth L. Deeley and Melanie M. Blunschi, Latham & Watkins LLP, San Francisco, California; for Defendant-Appellee.

Andrew J. Pincus, Archis A. Parasharami, and Daniel E. Jones, Mayer Brown LLP, Washington, D.C.; Tara S. Morrissey, Jonathan D. Urick, and Janet Galeria, United States Chamber Litigation Center, Washington, D.C., for Amicus Curiae The Chamber of Commerce of the United States of America.

Michele A. Shuster, Mac Murray & Shuster LLP, New Albany, Ohio, for Amicus Curiae Professional Association for Customer Engagement.

**OPINION**

GILMAN, Circuit Judge:

This case arises from the district court's dismissal with prejudice of Colin R. Brickman's class-action claim under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, against Meta Platforms, Inc. (Meta), formerly known as Facebook, Inc. Enacted in 1991, the TCPA generally bans calls made to a telephone if the call is generated by an "automatic telephone dialing system" (commonly referred to as an "autodialer"). *Id.* § 227(b)(1)(A). The TCPA defines an autodialer as a piece of equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" (an RSNG), and "to dial such numbers." *Id.* § 227(a)(1)(A).

Brickman argues that Meta violated the TCPA by sending unsolicited "Birthday Announcement" text messages to consumers' cell phones. He alleges that these Birthday Announcements were sent by Meta through an autodialer that used an RSNG to store and dial the telephone numbers of the consumers being texted. He does not argue that the RSNG actually generated the consumers' phone numbers (consumers provided them directly to Facebook), but that the RSNG was used to determine the order in which the phone numbers were stored and dialed, an activity that he argues implicates the TCPA. Meta disagrees with Brickman's interpretation of the autodialer provision, arguing that a TCPA-defined RSNG must actually generate the phone numbers in the first instance.

The question on appeal is whether a TCPA-defined autodialer must use an RSNG to generate the telephone numbers that are dialed. During our consideration of this

matter, another panel of this court answered this exact question in *Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022), holding that "an [autodialer] must generate and dial random or sequential *telephone* numbers under the TCPA's plain text." *Id.* at 1231 (emphasis in original). *Borden* resolves the sole issue in this case. We therefore hold that Meta did not violate the TCPA because it did not use a TCPA-defined autodialer that randomly or sequentially generated the telephone numbers in question.

Brickman argues to the contrary, contending that *Borden* does not control the outcome because "*Borden* addressed the 'production' prong of § 227(a)(1)(A), not the 'storage' prong at issue here." But *Borden* did not in fact limit its holding to the production prong. The court instead interpreted the definition of an autodialer in its entirety, finding that the text and context of the TCPA "make[] clear that the number in 'number generator' . . . means a *telephone* number." *Borden*, 53 F.4th at 1233 (emphasis in original). This is true regardless of whether the numbers are stored or produced—either way, "an autodialer must randomly or sequentially generate *telephone* numbers, not just any number." *Id.* at 1232 (emphasis in original). *Borden* therefore clearly controls this case.

For what it is worth, the majority of the present panel agrees with the analysis in *Borden*. But we recognize that whether we agree or not is inconsequential because we cannot disregard an earlier published decision of this circuit that is directly on point. *See United States v. Wright*, 46 F.4th 938, 946 (9th Cir. 2022) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit." (quoting *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir.

2019))).

We therefore **AFFIRM** the judgment of the district court.

---

VANDYKE, Circuit Judge, concurring:

I concur because, as the majority opinion correctly observes, our decision here is boxed in by circuit precedent. *See Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022). But I disagree with our precedent because it wrongly concludes that the word "number" means the same thing in all instances where it appears in the TCPA's definition of an autodialer. Specifically, *Borden* decided that a "random or sequential number generator" in the definition must mean a "random or sequential *phone* number generator" because the other times that the word "number" is used in the definition clearly refer to a phone number. *Compare id.* at 1233 ("[T]he repeated use of 'number' in the autodialer statutory definition makes clear, through context, that it must mean a telephone number."), *with* 47 U.S.C. § 227(a)(1)(A) ("[An autodialer] has the capacity—to store or produce telephone numbers to be called, using a random or sequential number generator."). There are several problems with this conclusion.

First, *Borden*'s analysis overlooks that the phrase "random or sequential number generator" has a known meaning as a computation tool, and there is no reason to ignore or modify that meaning just because the phrase is used in relation to a particular application. It is of course true that a phone *number* is comprised of numbers just as a *wooden* chair is made of wood. But it does not follow that a

"random or sequential number generator" in the TCPA's autodialer definition *must* be limited to a tool that produces only *telephone* numbers, any more than a reference to a "wood lathe" in instructions on how to build a wooden chair must mean a wood lathe only used to make chairs.  The reason is simple and the same in both examples: a generic "wood lathe" used for a variety of woodworking tasks works just fine to produce wooden chair legs, and a "random number generator" that can produce anything from single digit numbers to zip codes to telephone numbers can produce random telephone numbers.  Just as the term "wood lathe" in a chair-building instruction manual would naturally mean the tool that normally goes by the name "wood lathe," so too the term "random number generator" in a statutory provision about telephones would presumably mean the computational tool that normally goes by the name "random number generator."

This natural meaning of the term "random or sequential number generator" is easily illustrated by the Supreme Court decision that *Borden* says supports its conclusion, *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2022).  Like the TCPA, the *Duguid* decision is saturated in discussion about telephones.  But in footnote 7, *Duguid* says: "an autodialer might use a random number generator *to determine the order in which to pick* phone numbers from a preproduced list.  It would then store those numbers to be dialed at a later time."  *Id.* at 1172 n.7 (emphasis added).  Does the phrase "random number generator" in the first sentence quoted above refer to a "random *telephone* number generator?"  Of course not.  And that is true even though the next use of the word "number" in the very same sentence clearly *is* a reference to a telephone number.  The word "number" in the phrase "random number generator" doesn't mean "telephone number" in either

*Duguid*'s footnote 7 or the TCPA's definition of an autodialer, and the reason is the same in both instances: a random (or sequential) number generator is a term of art referring to a particular type of computation tool that can be used to generate all types of different numbers, from telephone numbers to zip codes to a sequence of consecutively ordered numbers (e.g., 1, 2, 3, … or 2, 4, 6, …).  The fundamental interpretive assumption underlying the *Borden* decision is just wrong.

Second, the conclusion that *Borden* reaches based on its erroneous starting point ultimately nullifies the significance of the word "store" in the clause "store or produce," by sneaking the term "produced" back into the relative clause, redefining an autodialer as equipment that can "store … telephone numbers to be called, [which are produced] using a random or sequential [telephone] number generator."  47 U.S.C. § 227(a)(1)(A).  That renders "store" superfluous, since the definition already covers telephone numbers that are "produced … using a random or sequential number generator."  And because the relative clause in the definition presumably means the same thing with regard to both "store" and "produce," *Borden*'s interpretation also oddly rewrites the statute to redundantly say "produce telephone numbers to be called, [which are produced] using a random or sequential [telephone] number generator."  *Id.*

This misinterpretation of the definition of autodialer does not just mangle the text's meaning.  It also fails to recognize the importance of *Duguid*'s footnote 7 to the Supreme Court's entire textual analysis in that case.  The interpretive quandary presented in *Duguid* was whether "using a random or sequential number generator" refers back to *both* "produce" *and* "store."  The reason this is a hard question is because, assuming the relative clause referred

back to both words, what could "store … telephone numbers to be called, using a random or sequential number generator" possibly mean?  If that phrase was meaningless, then that would be a strong textual argument *against* the interpretation adopted by the Supreme Court.  But the Court in footnote 7 explained that it wasn't meaningless, because "an autodialer might use a random number generator to determine the order in which to pick phone numbers *from a preproduced list*." *Duguid*, 141 S. Ct. at 1172 n.7 (emphasis added).  Where the preproduced list originally came from is irrelevant; the whole point of footnote 7 was that a random or sequential number generator might also be used to determine the "order in which to pick" *existing* telephone numbers, regardless of how they were generated.  Because the Court was trying to show that "store" had *independent* meaning from "produce," it would have made no sense in making that demonstration to implicitly rely on the fact that the list was randomly produced.

By removing any independent meaning for "store" from the TCPA's definition of autodialer, our court in *Borden* has silently cut the legs out from under the Supreme Court's interpretive rationale in *Duguid*.  Footnote 7 was essential to the holding of *Duguid* because it harmonizes the definition of an autodialer to make sense of both "store" and "produce."  Instead of following the logic of *Duguid*, our court in *Borden* strays from *Duguid*'s rationale by effectively waving away footnote 7 as ancillary rather than crucial to *Duguid*'s analysis, dismissing the key sentence in footnote 7 as merely "a snippet divorced from the context of the footnote and the entire opinion."  *See Borden*, 53 F.4th at 1235.

Third, there is no substance to the fear expressed by both Facebook in this case and our court in *Borden* that actually

giving meaning to the Supreme Court's interpretation in *Duguid*'s footnote 7 could turn every cell phone into an autodialer simply because cell phones store phone numbers. *See id.* at 1234 ("Borden's interpretation would go against the Supreme Court's holding and return this circuit back to the pre-*Duguid* state in which 'virtually all' cell phones were at risk of violating the TCPA."). To implicate the TCPA, a "random or sequential number generator" must be used to store numbers in a "random or sequential" order *for the purpose of automatically calling them in that order*. While I suppose one might be able to find a smartphone app that can do that—searching the app store using the term "autodialer" might be a good place to start—that's not how an ordinary cell phone works. A cell phone could only violate the TCPA if it deployed an application that automatically stored telephone numbers in a "random or sequential order" for the purpose of sequentially calling them in that order, unaided by the human dialer.

Finally, by not acknowledging the broader purposes of the TCPA, our court in *Borden* overlooked the extent to which the complained-of conduct falls within the TCPA's prohibitions. *Id.* at 1234. While *Borden* emphasized legislative history showing that legislators were concerned about automatic sequential dialing that could dangerously interfere with the use of emergency service telephone lines and overwhelm sequentially numbered business lines, it minimized the fact that legislators were likewise concerned with the nuisance to other commercial and residential consumers who had been "receiving unsolicited calls from automatic dialer systems." H. R. Rep. No. 102–317, p. 24 (1991); *see also Duguid*, 141 S. Ct. at 1167 ("Autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees.").

If the TCPA targeted only automated calls to emergency services and businesses with multiple phone lines, that is what it would say.